IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-9-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DENNIS RAY HOWARD, | ) | |
| | ) | |
| Defendant. | ) | |

On January 17, 2012, a federal grand jury indicted Dennis Ray Howard ("Howard" or "defendant") and charged him with (1) one count of conspiracy to distribute and to possess with intent to distribute one hundred grams or more of a mixture or substance containing a detectable amount of phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 841(a)(1) and 846, (2) seven counts of distribution of a quantity of a mixture or substance containing a detectable amount of PCP, in violation of 21 U.S.C. § 841(a)(1), and, (3) one count of possession with intent to distribute a quantity of a mixture or substance containing a detectable amount of PCP, in violation of 21 U.S.C. § 841(a)(1) [D.E. 1]. On April 23, 2012, Howard filed a motion to suppress [D.E. 19], a motion to sequester witnesses [D.E. 20], a motion for notice of Rule 404(b) evidence [D.E. 21], a motion for production of exculpatory and impeachment evidence [D.E. 22], and a motion to disclose the identities of confidential informants [D.E. 23]. On May 9, 2012, the government responded to Howard's motions [D.E. 24]. The court addresses Howard's motions seriatim.

I.

First, Howard moves to suppress evidence seized as a result of a traffic stop. Mot. Suppress [D.E. 19] 1. Beginning in September 2010, detectives with the Wilson Police Department used various confidential informants to conduct seven controlled buys of PCP from Howard. Gov't Resp.

[D.E. 24] 3. On May 13, 2011, Detective Corprew of the Wilson Police Department interviewed a confidential informant ("CI") who offered to make a controlled buy from Howard. See [D.E. 19-2]; Gov't Resp. 3. At 1:53 p.m. that afternoon, the CI called Howard and asked to purchase "an onion," which is the street term for an ounce of PCP. Gov't Resp. 3; see [D.E. 19-2]. Howard asked where the CI was, the CI told Howard that he was at home, and Howard told the CI that he would "come through there in a minute." Gov't Resp. 3–4 (quotation omitted); see [D.E. 19-2]. Detectives monitored the call. Gov't Resp. 3; see [D.E. 19-1, 19-2].

Detectives then established surveillance of Howard's residence and the CI's residence. [D.E. 19-2]; Gov't Resp. 4. Detectives Corprew and Powers observed Howard's residence, and saw Howard leave. [D.E. 19-2]; Gov't Resp. 4. Thereafter, other detectives observed Howard arrive at the CI's residence, exit his car, and approach the door of the CI's residence. [D.E. 19-2]; Gov't Resp. 4.[1] Detectives watched Howard briefly speak with an unknown male and then return to Howard's car and drive away. Gov't Resp. 4; see [D.E. 19-2].

After Howard left, Detectives Corprew and Powers asked Officer John Little ("Officer Little"), who was driving a marked police car, to perform a traffic stop on Howard's car for excessively tinted windows. Gov't Resp. 4–5; see Mot. Suppress 2; [D.E. 19-2]. Officer Little stopped Howard for excessively tinted windows. See Mot. Suppress 2. At about the same time that Officer Little made the stop, Detectives Corprew and Powers arrived at the scene of the stop and decided to question Howard about his attempt to sell PCP to the CI. Gov't Resp. 5; see [D.E. 19-2]. Detective Corprew approached Howard's car and smelled PCP. [D.E. 19-2]; Gov't Resp. 5.

---

[1] In the motion to suppress, Howard's attorney asserts that Howard never left his car and instead spoke to a woman who approached his car and then left. See Mot. Suppress 2. Howard cites no evidence to support this assertion. Thus, the court disregards it.

2

Detective Powers then detained Howard. The officers, however, did not feel safe to search Howard's car at the scene because it was stopped in an area known for drug trafficking. Gov't Resp. 5; see [D.E. 19-2]. Thus, the officers transported Howard and his car to the Wilson Police Department, which was one-and-one-half miles away from the scene of the stop. Gov't Resp. 5; see [D.E. 19-2]. After searching Howard's car, officers found a bottle of PCP hidden under the ashtray. Mot. Suppress 2; [D.E. 19-2]; Gov't Resp. 5. Officers then obtained a search warrant for Howard's residence, where they discovered evidence of the possession and distribution of illegal narcotics, including black vial tops, ledgers and receipts, a firearm, ammunition, and a police scanner.

Howard asks the court to suppress the evidence seized from his car, as well as evidence obtained from the search of his residence, as fruit of the poisonous tree. See Mot. Suppress 1. Howard argues that the officers impermissibly extended the traffic stop to obtain probable cause to search his car. See id. 3. Specifically, Howard contends that the officers unjustifiably prolonged the stop to smell his car. See id.

First, the officers did not unreasonably prolong the stop. "The maximum acceptable length of a routine traffic stop cannot be stated with mathematical precision." United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008). "Instead, the appropriate constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose." Id.; see Illinois v. Caballes, 543 U.S. 405, 407 (2005). The court must ask "whether an officer diligently pursued the investigation of the justification for the stop." United States v. Guijon-Ortiz, 660 F.3d 757, 767 (4th Cir. 2011); see also United States v. Mason, 628 F.3d 123, 131 (4th Cir. 2010) (holding that the inquiry is whether the "period [was] reasonably necessary to effectuate the purposes of the lawful detention"), cert. denied, 132 S. Ct. 329 (2011). "Police diligence involves requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket." United States v. Digiovanni, 650 F.3d

3

498, 507 (4th Cir. 2011); see Guijon-Ortiz, 660 F.3d at 764–65.

Here, no evidence suggests that Officer Little did anything other than "[go] about his business promptly and with efficiency." Mason, 628 F.3d at 132. Even if Officer Little was less than diligent in failing to immediately issue a traffic ticket, there is no evidence that Officer Little was intentionally stalling, see United States v. Farrior, 535 F.3d 210, 219–20 (4th Cir. 2008), or that he caused anything more than a de minimis delay. See, e.g., Digiovanni, 650 F.3d at 509; Mason, 628 F.3d at 132. Thus, Officer Little did not unreasonably extend the traffic stop. Furthermore, no evidence suggests that, by approaching Howard's car and smelling the odor of PCP, Detective Corprew measurably extended the duration of the stop. See Arizona v. Johnson, 555 U.S. 323, 325 (2009) (an officer can "inquir[e] into matters unrelated to the justification for the traffic stop . . . so long as [those] inquiries do not measurably extend the stop's duration."); Guijon-Ortiz, 660 F.3d at 764–65; Mason, 628 F.3d at 131. Accordingly, the officers did not unreasonably prolong the stop to obtain probable cause to search the car.

Second, even if Officer Little did prolong the stop to wait for Detectives Corprew and Powers to arrive, Officer Little was justified in doing so. "[A] prolonged automobile stop requires . . . a 'reasonable suspicion' that illegal activity is afoot." Branch, 537 F.3d at 336; see id. at 337; Mason, 628 F.3d at 128. "Reasonable suspicion requires more than a hunch but less than probable cause, and may be based on the collective knowledge of officers involved in an investigation." United States v. Arango-Lopez, 340 F. App'x 154, 155 (4th Cir. 2009) (per curiam) (unpublished) (citing Illinois v. Wardlow, 528 U.S. 119, 123–24 (2000), and United States v. Hensley, 469 U.S. 221, 232 (1985)). Thus, so long as the officer ordering an investigative detention has knowledge of facts establishing a reasonable suspicion, the officer actually executing the order does not need to be personally aware of those facts. See United States v. Massenburg, 654 F.3d 480, 492–93 (4th Cir.

4

2011); United States v. Laughman, 618 F.2d 1067, 1072–73 & n.3 (4th Cir. 1980).

Here, after monitoring Howard's attempt to sell PCP to the CI, Detectives Corprew and Powers instructed Officer Little to stop Howard's car. Based on the collective-knowledge doctrine, if Officer Little had intentionally prolonged the stop, he would have been justified in doing so. Accordingly, the court denies Howard's motion to suppress the evidence seized from his car and his residence.

II.

Howard asks the court to order the government to designate one case agent as its "representative" and sequester the remainder of the government's witnesses. Mot. Sequester [D.E. 20] 1–2. The government responds that it will designate its representative case agent at the beginning of the trial. See Gov't Resp. 9.

Rule 615 of the Federal Rules of Evidence "requires the trial court, at the request of a party, to sequester a witness, expressly providing an exception for 'an officer or employee of a party which is not a natural person designated as its representative by its attorney.'" United States v. Farnham, 791 F.2d 331, 334 (4th Cir. 1986) (quoting Fed. R. Evid. 615). Accordingly, the government's designated case agent is permitted to remain in the courtroom, even if the case agent is expected to testify. See, e.g., United States v. Kosko, 870 F.2d 162, 164 (4th Cir. 1989); Farnham, 791 F.2d at 334; United States v. Parodi, 703 F.2d 768, 773 (4th Cir. 1983) (collecting cases).

The government must designate its representative case agent at the beginning of trial. Moreover, the court grants Howard's request to exclude all witnesses except the government's designated case agent. See Fed. R. Evid. 615. Likewise, the sequestration rule also applies to Howard's witness (other than Howard). See id.

5

III.

Howard asks the court to order the government to provide notice of Rule 404(b) evidence thirty days before trial. See Mot. Notice [D.E. 21] 1–2. Under Rule 404(b), the government need only "provide reasonable notice in advance of trial . . . of the general nature of any [Rule 404(b)] evidence it intends to introduce at trial." United States v. Swain, No. 4:07-CR-62-D, 2008 WL 717720, at *1 (E.D.N.C. Mar. 17, 2008) (unpublished) (quotation omitted) (alterations in original); see also Fed. R. Evid. 404(b)(2).

Here, notice three business days before trial is reasonable. See, e.g., United States v. Graham, 468 F. Supp. 2d 800, 802 (E.D.N.C. 2006); accord Swain, 2008 WL 717720, at *1. Thus, the court denies Howard's motion to receive notice thirty days before trial.

IV.

Howard moves for the production of exculpatory and impeachment evidence. See Mot. Production [D.E. 22] 1. Under Brady and Giglio, the government need only disclose exculpatory and impeachment evidence "in time for its effective use at trial." United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 (4th Cir. 1985); see United States v. Jeffers, 570 F.3d 557, 573 (4th Cir. 2009). The government asserts that it has already provided Howard all discoverable materials except for the identities of confidential informants and the Giglio material concerning potential government witnesses. See Gov't Resp. 10. The government asserts that it is aware of its obligations under Brady and Giglio and will disclose all exculpatory and impeachment evidence in a timely manner. See id. 10–11. The court credits the government's assertion that it will disclose all exculpatory and impeachment evidence "in time for its effective use at trial." Smith Grading, 760 F.2d at 532. Accordingly, the court denies Howard's request that the court direct the government to produce Brady and Giglio material.

6

V.

Finally, Howard asks the court to order the government to disclose the identities of four confidential informants, as well as any exculpatory and impeachment information regarding the confidential informants. See Mot. Disclose [D.E. 23] 1, 6. In determining whether to disclose the identity of a confidential informant, the court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro v. United States, 353 U.S. 53, 62 (1957). The Fourth Circuit has held that "when the informant is an active participant in the transactions at issue instead of just a mere tipster, the failure to require disclosure of the informant's identity is more likely to amount to error." United States v. Blevins, 960 F.2d 1252, 1258 (4th Cir. 1992); see United States v. Price, 783 F.2d 1132, 1138–39 (4th Cir. 1986).

Howard asserts that the four confidential informants were participants in the alleged crimes. See Mot. Disclose 5–6. The government responds that it will disclose the identities of the four confidential informants one week before trial, and cautions that revealing the identities any earlier might unnecessarily endanger the confidential informants. See Gov't Resp. 11–12. Disclosing the identities of the four confidential informants five business days before trial does not impede Howard's right to prepare his defense, and simultaneously protects "the public interest in effective law enforcement." Roviaro, 353 U.S. at 59. Accordingly, the government shall disclose the identities of the four confidential informants not later than five business days before trial.

VI.

In sum, the court DENIES Howard's motion to suppress [D.E. 19], motion for notice of Rule 404(b) evidence [D.E. 21], and motion for production of exculpatory and impeachment evidence [D.E. 22]. The court GRANTS Howard's motion to sequester [D.E. 20] and ORDERS the government to designate its representative case agent at the beginning of the trial. The sequestration

7

rule also applies to Howard's witnesses. The court GRANTS Howard's motion to disclose [D.E. 23] and ORDERS the government to disclose the identities of the four confidential informants not later than five business days before trial. The court also ORDERS the government to provide 404(b) notice not less than three business days before trial.

SO ORDERED. This 29 day of June 2012.

JAMES C. DEVER III
Chief United States District Judge